Deaderick, J.,
delivered the opinion of the Court.
In 1845 Martin conveyed a lot in Memphis, one-half to complainant, Fountain, in fee, and the other half to Thomas Freeman, as trustee of his daughter, Frances Ann Freeman, during her natural life, and at *302 her death to become the absolute property in fee simple of such child or children of the said Frances Ann Freeman as may be living “at her death, and in default of such child or children, to her' heirs general.”
Francis married James C. Read and had a child, Ann, living in 1854. At this time a bill was filed by the nest friend of Fountain Freeman, aged then fourteen years and four months, against Read and wife and their infant child, in thle common law side of the Common Law and Chancery Court of the city of Memphis. The bill sets out the conveyance of the lot to complainant and his sister, the said Frances, and exhibits the deed with his bill, and states that he and his sister are non-residents of the State, unable to improve the property, and that although it was valuable, was almost entirely unproductive, and- that it would be manifestly to the interest of the complainant and other parties interested, that it should be sold; and prays that the sam.e should be sold for partition, and that the proceeds of sale be held subject to the order of the court. Publication was made as to all the defendants, and a guardian ad litem appointed for the minor, and an answer filed by him, and judgments pro eonfesso as to the trustee, Freeman, Read and wife. Then follow some sixteen pages of the record of decrees and reports of the master, so commingled that it would be difficult to determine the order in which the events recited occurred, but for. occasional references to orders or adjudications made and directions to the master for his action. From a careful analysis of this unmethodical transcript, we are of opinion that *303 it may be safely deduced that the court, after declaring the rights of the parties in the lot conveyed by Martin, directed the clerk to take testimony and report to the present (November) Term, 1854, “whether it would be to the' interest of said petitioner to have said real estate sold entirely, and whether the one-half, belonging to said petitioner, can be sold for as fair a price and without loss to either of the owners, without -a sale of the other half, and whether it is necessary to sell the whole of said property mentioned in the petition for the benefit of the owners.” Thereupon, the clerk reported that he had called before him Jno. Martin and R. E. Orne, and taken their written statement under oath, which he marks exhibit “A” to his report, from which he reported that “ it was necessary to the interest of the parties that said property should be sold, and that to insure its bringing anything like its value, the whole of it should, be sold together, as it was not susceptible of being equally divided without detriment to the parties.”
And said report not being excepted to, it was confirmed and the lot was ordered to be sold, after advertisement in a newspaper, for one-fourth cash — the remainder in equal payments of six, twelve, eighteen and twenty-four months, with interest from day of sale. The master reported .to the March Term, 1855, that he sold the lot as directed, on the 16th of January, 1855, to the Southern Bank of Tennessee, at the price of $11,925, and that the terms of the sale had been complied with, and notes executed for the deferred payments. The report of sale not being excepted to, *304 was confirmed. The fund paid into court from time to time was disposed of by the court, by paying Fountain Freeman’s share to his guardian, and the residue to the attorney in fact of Frances Read; except as to Fountain, the last two payments were made to him in the fall of 1856 and spring of 1857 — he having attained his majority in April, 1856, and having also, received his sister’s share as her attorney in fact.
In April, 1857, the master reported that all the purchase money had been paid; the title to the lot was then divested out of the parties to the cause and vested in the purchaser.
Fountain Freeman, Mrs. Reed, and her two minor-children born after the sale of the property under the proceedings, hereinbefore recited, bring this bill against the present claimants of the property, who are purchasers under the Southern Bank of Tennessee. The infant child of Mrs. Read, who was made a defendant to the said bill for sale of the lot, died before the bringing of this bill.
They seek by their bill to avoid the sale, and have it set aside as a cloud upon their title, and state several grounds upon which they assume they are entitled to the relief prayed for. Complainants charge that they had no knowledge of the proceedings had or instituted in the case for the sale of the lot, and that such proceedings were a fraud upon them. The record in that case, however, negatives the allegation of the ignorance of said Fountain and Frances Ann — as it appears that the bill was sworn to by Fountain as agent and next friend, and that he received the greater por *305 tion of tbe money paid to Mrs. Read’ as her attorney in fact, and also after he obtained his majority two paynaents were made directly to' him on account of his own share. Powers of attorney also appear in. the record, executed by Mrs. Read, authorizing him to receive proceeds of sale for her. Nor is there any proof in the record to sustain the .‘charge of fraud. The questions which are decisive of the rights of the parties are fairly raised and presented in the bill, and amended bill and exhibits, and the demurrers thereto.
The proceedings of the Common Law and Chancery Court of Memphis, under which the lot in controversy was sold, are exhibited with the bill, and it is insisted that these proceedings were void, and that the purchaser acquired no title thereunder.
We are of opinion that the court' had jurisdiction to order a partition of the lot, or if partition was impracticable, to direct a sale of the premises for that purpose. The bill was filed to attain this object, and assumes by the frame of it that partition is impracticable. and that the lot should be sold, as well for this reason, as because it is manifestly for the interest of the tenants in common. For the purpose of partition we hold that the Common Law.and Chancery Court had the jurisdiction to sell the premises, such being the alternative mode of effecting that object, when owing to the situation of the. land, partition thereof could not be made. The bill expressly prays that the-lot be. sold for partition, and the court in referring the question to the master, directs him to hear proof, and report whether the one-half belonging to said pe *306 titioner* can be sold without loss to either of the owners, without a sale of the other half.
This instruction to the master, in substance and effect, directs him to ascertain and report if the lot is susceptible of division. So understanding the order, he reports that to insure the bringing of anything like its value, the whole lot should be sold, as it is not susceptible of being equally divided without detriment to the parties. Upon this report the lot was sold, and no complaint is made that it did not bring its full value.
Fountain Freeman, as tenant in common, had the right to enforce the partition of the land itself; or, if because of its situation it was impracticable to divide it, then to have a sale of it for the purpose of division — and this right is not to be denied by reason of the infancy either of the complainants or defendants. That any of the parties are minors, is a reason why the court should be careful to guard their interests, but is no reason why the right should be denied to them, when upon satisfactory evidence it is shown to be to their interest that the partition, or sale instead -of partition, should be made.
It is further insisted by complainants that the two children of Frances Head, born after the sale for partition, not being in esse at the time of the sale, makes .the proceedings void as to them, and being void as to them, it is void as to all the parties in interest. Frances Head and her only child living at the institution of the proceedings for partition, were made defendants, and we are of opinion that the proposition *307 that a decree against them would be- -binding upon the remaindermen not in esse, is well supported by the authority, upon the ground of a virtual representation of. such remaindermen by those who were made defendants in the cause.
The Chancellor dismissed the bill, and we affirm his decree.